IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CURTIS E. WILLIAMS, #275-455 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JKB-16-1226 |
| TIMOTHY CHESNAVAGE<br>DR. KAHLID ELBEDAWI | * | |
| | * | |
| Defendants | | |

\*\*\*

## MEMORANDUM OPINION

Plaintiff Curtis E. Williams, presently confined at the Maryland Reception Diagnostic Classification Center ("MRDCC"), filed a civil rights action pursuant to 42 U.S.C. § 1983, seeking money damages against a Baltimore County Detention Center ("BCDC") corrections officer, Timothy Chesnavage, alleging use of excessive force during an incident on December 10, 2015. (ECF 1 at p. 3.)[1] Williams further claimed that after receiving treatment for injury suffered during the incident, Dr. Kahlid Elbedawi, a BCDC physician, did not provide necessary pain medication. (*Id.* at p. 4.)

On October 28, 2016, Williams was granted 21 days to complete a United States Marshal service of process form to assist the Clerk in obtaining service of process on Dr. Elbedawi. (ECF 16.) Williams did not comply; accordingly, Dr. Elbedawai is dismissed without prejudice from this action.

Defendant Chesnavage filed a motion to dismiss or, in the alternative, for summary judgment (ECF 8) that was dismissed without prejudice, subject to renewal, upon submission of an affidavit. Chesnavage has complied. (ECF 14.) Although Williams was informed on two occasions pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that he

---

[1] This memorandum opinion references the pagination provided by the court's electronic docketing system.

was entitled to file written opposition to the motion or risk dismissal of his case without further notice (ECF 12 and 15), Williams has failed to respond to the motion.

**Standard of Review**

Motion to Dismiss

In reviewing the complaint in light of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States has explained a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A

2

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Summary Judgment

Summary judgment is governed by Rule 56(a), which provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526

(internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Because Chesnavage's dispositive motion relies on exhibits outside the pleadings, it shall be treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) (2017).

**Analysis**

The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)).

The Supreme Court held in *Kingsley v. Hendrickson* that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." __ U.S. __, 135 S. Ct. 2466, 2473 (2015). It is enough that a pretrial detainee show that the "force purposely or knowingly used against him was objectively unreasonable," *id.*, regardless of an officer's state of mind, *id.* at 2472, *cited in Dilworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016). Pursuant to *Kingsley,* this court must consider whether under the "facts and circumstances" of this particular case, and from the "perspective of a reasonable officer on the scene," the force used against Williams was objectively excessive. *Kingsley*, 135 S. Ct. at 2473.

In his unverified complaint, Williams claims that Chesnavage subjected him to excessive force while Williams was detained at the Baltimore County Detention Center (BCDC) awaiting trial. (ECF 1 at p. 3.) Williams claims he was fending off an attack at the hands of a fellow detainee when Chesnavage subjected Williams to pepper spray and forcefully handcuffed him

behind his back, causing dislocation of Williams's shoulder requiring repair at a local hospital. (*Id.* at pp. 3-4.)

Defendant Chesnavage and other corrections personnel present a different version of events.  In his unopposed motion, supported by affidavits under oath and verified business records, Chesnavage asserts that at approximately 9:55 a.m. on December 10, 2015, Officer S. Williams (hereinafter, "Officer Williams") observed Curtis Williams and Martin Morgan holding and striking each other with closed fists in a corner of inmate housing unit 4F. Officer Williams called for all available officers and medical staff to report to the area over his radio and locked down the housing unit.  (ECF 14-2 at p. 1.)  Corporal R. McDowell, Officer Cruz, and the tactical team, consisting of Officers Jacob Bennett, Herman Curry, and Timothy Chesnavage, responded and arrived at the incident at the same time.  (ECF 14-6, McDowell Aff., p. 2.) McDowell, Chesnavage, and Bennett approached Williams and Morgan, who continued to actively strike each other.  (ECF 14-4, Chesnavage Aff., p. 2.)  McDowell ordered the two to stop fighting, to no avail.  (*Id.,* p. 2.)  McDowell grabbed Morgan and pulled him away from Williams just as Chesnavage and Bennett both deployed pepper spray on both detainees. (ECF 14-5, p. 2.)  McDowell ordered Morgan to lie face down and put his hands behind his back. Morgan complied and was handcuffed.  (ECF 14-6 at p. 3.)  Chesnavage ordered Williams to turn around and put his hands behind his back. Williams complied and was handcuffed behind his back.  (ECF 14-4 at p. 3.)  Williams appeared to have two lacerations on his head that were bleeding profusely. After he was evaluated and first aid was rendered by on-scene medical staff, Williams was escorted to the medical section by Chesnavage and Officer Lovelist.  (*Id.*). Williams was treated by Dr. Khalid El-Bedawi for a one-and-a-quarter inch laceration on the right side of Williams's head which required three stitches and a three-and-a-half inch laceration

to his forehead, which required eight stitches. (ECF 14-1 at p. 1.)  When he later complained to McDowell of left shoulder pain caused by handcuffing, he was taken back to the medical treatment room, where he was examined and transported to St. Joseph's Medical Center in Towson, Maryland, to have the dislocation reduced.  (ECF 14-6 at p. 4.)

The uncontroverted evidence demonstrates that Chesnavage deployed a burst of pepper spray after Williams and Morgan failed to comply with lawful orders to stop fighting.  Although Williams deduces his shoulder dislocation occurred as a result of improper handcuffing, the uncontroverted record and affidavit evidence demonstrate that the handcuffing occurred while Williams was standing, and that Williams did not report the injury until after his initial medical assessment and shower.  Nothing suggests that Chesnavage's actions led to the injury.  The use of force was tempered and objectively reasonable under the circumstances.

## Conclusion

Defendant Chesnavage's unopposed dispositive motion, construed as a motion for summary judgment, is granted.  A separate order follows.


April 5, 2017                                    /s/
Date                                   James K. Bredar
                                       United States District Judge